The first case for argument this morning is 22-1085 Janam Tech v. Google. Mr. Dalton, whenever you're ready. Did I mispronounce your client's name? Jenner. Jenner. Please proceed. May it please the Court. In this case, the PTAB stated that it was adopting our claim construction that we proposed. What it used was something vastly different. It provided no explanation as to why it didn't adopt our claim construction or apply it. It did not address the with or without a condition element in the ITP limitation as well. The silence and not knowing why or how that they didn't apply that. Let me ask you just on that point. Did you also put in a parenthetical about directly or indirectly? We did on appeal, and that was for clarification. Okay, but that was not the claim construction that was what you're saying was adopted. Correct. Yes, exactly. So what the PTAB did was require a direct linkage to keeping a connection active. They rejected the idea that it could be indirect by sending a retransmission packet that would elicit an acknowledgement packet that would return and then reset. But just to be clear, my point was that the construction that you say the board adopted and it was your construction did not include the words direct or indirect. They said they adopted our construction, but what the board did was very different. They said that they looked at the purpose of the packet. That wasn't our construction. And when we talk about purpose, this is an apparatus claim. In claim one, the node is receiving a message from another node with certain information that it then accesses, which is the idle time period, the ITP. In your patent owner response, didn't you translate your proposed construction as being purpose directed, like an A408? Put differently, if any packet is sent or received by the apparatus for the purpose of keeping the connection active, then that's outside the scope of the claimed idle time period. So, I mean, it was your patent owner response that basically offered up a translation of whatever the construction was. I mean, to me, with or without condition, that language is pretty abstract. I'm not really sure what it's getting at if I just read it sitting there alone. But here, the put differently sentence in the patent owner response of A408 really helped cement what you're talking about, makes it much more tangible. And the way you described it was it's about the purpose of the packet. What is that purpose of the packet? And, you know, when you send that retransmission packet, that idle time period clock still keeps running. It doesn't stop. So, you know, it's still on the path to timing out eventually. Yes, yes, that's correct in part. What when you send the retransmission packet, what it's doing is trying to elicit the exact same response as the original data packet that was sent. It's just following up. It's doing the same thing. And it's a connection and the connections go both ways. And so it is sending a retransmission packet, trying to make sure that the message gets there and also to elicit an act coming back to confirm that. Otherwise, it's going to send another one. I'm confused. You said Judge Chen asked you a question and then you said it was correct in part. Yes. Was anything Judge Chen said incorrect? Well, the point I was going to make is that this is an apparatus claim. And it's this apparatus. That's a yes or no. It was incorrect. Was anything Judge Chen said incorrect? I believe so. And yes. The way I reported out what was in your patent owner response of A408, that was correct, right? Yes. Okay. And it's also correct that a retransmission packet, once it's sent out, that doesn't stop the idle time period clock from running. It keeps it running. It doesn't stop the abort timeout in EGERT. And we don't agree that that is an idle time period. And there's a fundamental difference. So in EGERT, they're trying to have connections withstand long periods of disconnection. The ITP, it's periods of inactivity when no messages are being sent. So in EGERT, it starts when you send a data segment. It won't start if there's nothing else sent. In the ITP, it's running and it's a period of inactivity that it's looking at. And so it's fundamentally – I mean, not fundamentally, but it's different. And it's a major difference because the ITP wouldn't be triggered when you have these data transmission packets being sent. And in EGERT, they have to be sent before that abort timeout would happen. And so you have a timeout, a timer, a timeout that requires data packages to be sent, which wouldn't happen under the ITP. And so it's – what we're doing is conserving resources. So you're not tying up bandwidth. You're not sending packets unnecessarily. You're not using keepalives that have caused problems about triggering – accidentally triggering disconnections and messing up firewalls. We're trying to avoid all that and basically get the functionality of the keepalive without having to actually send it. And that's by negotiating this idle time period up front where both sides will know, okay, instead of sending a probe out periodically to see if you're still there, we're just going to agree that this is the amount of time that we're going to stay connected. Doesn't EGERT do that, too, up front? The two nodes are doing some negotiated, customized timeout period? Yes, yes, but it's a different timeout period. So that's the same thing as what you just said this invention is about. No, the difference is that the timeout period that they are negotiating involves data packages being sent during – while the clock is ticking. That would not happen in the ITP. ITP is inactivity. They're maintaining connection across when it's disconnected for a longer period of time. I mean, I would agree with your construction if the claim had said an idle time period during which no packet is communicated in the TCP variant connection period. But the claim keeps going, which is to keep the TCP variant connection active. So then in the words of your patent owner response, we've got to now figure out if a packet is being communicated during the idle time period, what is the purpose of that communicated data packet, right? Yes, and packets can have multiple purposes. So it's not a singular focus of what a packet is doing. So a data transmission would start the clock, but it's eliciting an ACK. The retransmission is making sure – this is a TCP variant, so TCP is a reliable connection. They're making sure that it's a reliable connection that data gets through. So the retransmission gets the data through, it keeps the connection functioning and working, and they're using it. And it elicits an ACK, and if that ACK comes back, then the ATO would start again. But that's – again, that's the user timeout. It's from TCP, and it's different than what we're doing. And I guess I would like to direct you to JA1688, and this is the RC5482 that Eggert was a co-author of. And I think that the distinction about retransmissions – this makes it fairly clear what's going on. And so it's at the top of 1688, and it's discussing the – when there's an absence of an application-specified user timeout, the TC specification, 793, defines a default user timeout. So Eggert's using this user timeout and having the two sides negotiate to extend it so that the connection will remain active for longer periods of time. And it says that RFC1122, which is a host requirement for Internet connections, and it says that – refines that definition, so talking about the user timeout, by introducing two thresholds, R1 and R2. R2 is greater than R1, and that controls the number of retransmissions or attempts of a signal segment. And R2 is a time value that will timeout. So you have R1, which is the number of retransmissions that's occurring, and it has to be smaller than R2, which is the – kind of the timeout. And these function together. So the timeout, the user timeout, as defined in this requirements document, RFC1122. Where did you make that argument in your briefs? We made this argument by pointing to the – this other portion. Yes, so 1692. And this is – but this is the point, Your Honor. This argument about the – I'm sorry. Where did you make the reference to 1688 in your briefs? I don't believe that was. But this is the point about addressing this new argument the board adopted about the retransmission timer potentially being greater than a board timeout option and not triggering it. So it goes to that. And that's the whole point of the prejudice, where a new argument was adopted that we never had a chance to address. That's an alternative finding, right? There's – the board had multiple pathways to finding these claims unpatentable. That's correct. You're talking about a different one than the primary one about just whether the aggregate reference is retransmission packets. The purpose is to keep a connection active and not active. Right. Yeah. And for – going back to the purpose, the functionality of the packet – so it's how these packets – how the software is programmed and what it does. And, again, it can do multiple things. And here it elicits an act that would restart the aggregate timer. But it's more than that too. It's the transmission that's required to go on while the board timeout is operating. It's not inactivity as contemplated by our claims. Yiran, do you have a rebuttal? Thank you. I don't want to hear from you. Good morning. Good morning, Your Honors. May it please the Court. The board properly applied Jeneb's construction and made factual findings with respect to aggregate. We believe substantial evidence more than supports the board's factual findings. Judge Chen, you're absolutely right if you look at the board's decision. And what they did was they followed faithfully, from our perspective, their purpose-based construction. They specified it based on Appendix 408. Judge Chen, as you pointed out, they were very clear as to what they were arguing with respect to their construction. They said it's the purpose is to keep the TCP variant connection active. Is it possible for a packet transmission to serve more than one purpose? Perhaps it can have dual purposes. It certainly can, Your Honor. But in this instance, with respect to the retransmission timer, the retransmission is to retransmit the packet, as the board found in its decision that the retransmission packet does not actually reset the ATO, the board timeout option time period. Narrowly speaking, the retransmission packet by itself does not reset the timeout period. But nevertheless, it's a critical piece, is it not, of ultimately keeping the connection alive. So, Your Honor, I would disagree with that. And the reason for that is, and this goes to the alternative theories, as you mentioned, there were multiple theories here that we presented, is that… Let's assume for the moment the alternate theory was raised too late and was a surprise theory that shouldn't have been addressed by the board. So let's just talk about the primary thing. And I was actually going to stay on the primary argument, Your Honor, and that goes to the disconnection. So if you actually look at the way our arguments were presented, we also pointed to disconnection. So in the retransmission context, the retransmission packet may never be sent or received, right? And that was, again, a factual finding the board made, and that's at Appendix 19 through 22, where the board went through very carefully all of the arguments and rejected that, that even if that was the case, there are scenarios where the retransmission packet might not be sent or received. So they just simply cannot prevail even under that theory. Right, but purpose is almost like intent. What is the intent of the transmission of the retransmission packet? And, of course, the primary intent is to get that data that's in that packet over to the other node. But there's already a connection that's been established that when there's a race against the clock to avoid it timing out, and it seems to be that necessary piece of avoiding the timeout is to make sure you keep pumping out that retransmission packet until you get an acknowledgment signal on the other side. So, Your Honor, I would respectfully disagree that the retransmission packet's purpose is to keep the connection alive. Well, it's perhaps a secondary purpose. I'm not saying it's the primary purpose. And that's the question of whether a packet could have dual purposes. Let me substitute a word, or dually effects, if not dual purposes. Sure. And I think what we have to look at is at the end of the day, what does the claim require here? The claim is very clear that it's to keep the connection active. And if you look at the retransmission timer and the retransmission packet, its purpose is to retransmit the data. That's what it is. And as the Board found, again, looking at all the evidence, it made a factual finding that the retransmission timer does not serve the purpose that they said to the Board multiple times what the purpose was for this claim. And we think, again, under this Board's case law, under substantial evidence review, they simply cannot surpass that. And with respect to the alternative theory, Judge Chan, we believe one of the issues that has happened throughout this proceeding is Genem's arguments kept on shifting. If you look at their patent owner response, they made one argument. They actually disclaimed those arguments in their rehearing request and focused exclusively on the retransmission timer. And the Board gave them plenty of opportunity to argue about the retransmission timer. At the hearing, they were asked questions. We, of course, were asked the same questions, and we responded to the Board's questions. But the burden of proof in this proceeding was on you, right? Yes, Your Honor. And this alternative theory, there's no fair way of reading your petition, including this particular theory about competing timeout periods. Is that also fair to say? I agree, Your Honor. I think if you look at our petition, in the opening petition, what we relied on was the disconnection theory and, of course, the ATO time period. And I think my point with respect to the extent you want to call it a theory or whatever words we want to use here, it's consistent with what we argued to the Board. In fact, that disclosure is on the same page of EGERT as what we pointed out for the ATO. So, again, depending on how you define theory, it did not change, right? Our point always was that retransmission packets might never exist because there's a disconnection. And what they did was, again, their arguments kept on shifting, and I think it's telling, even on appeal, as Judge Crosu pointed out, the directly or indirectly language was not in their patent owner response. So this has been a moving target for us and the Board, and we think they had plenty of opportunity to address these arguments. But we don't need that judgment to win here. We think this Court can affirm based on the primary basis that the Board found, which was that this is a purpose-based construction. The Board adopted it. It faithfully applied it. It made factual findings based on expert testimony and the references, and that's more than enough to affirm. Unless Your Honors have any other questions, I'm happy to give the Court its time back. Thank you. I just want to address a few points. Counsel, we haven't addressed your procedural arguments. For example, where in the record below did you complain about any lack of notice or a procedural violation to the Board? Your Honor, one, the procedural violation became clear with respect to the new argument that was introduced, the oral argument, only when we received the denial of our request for rehearing. So we didn't really have an opportunity to address that. Is that your same answer regarding your APA objection? Well, that is when we got the decision. Again, we were hoping and we thought the Board would respond to our claim construction arguments, but we got no explanation still. So we were just left in the dark about why the language, with or without a condition or via any mechanism, would not have a retransmission packet that elicits one step removed from doing it directly. It elicits an act to keep a connection active. Why that would not follow that construction? The Board just didn't address that language. So any opinion which Counsel finds confusing is an APA violation? I think there is a difference between just not addressing it whatsoever or addressing it and just not being clear to Counsel. Isn't there an implication if something is not addressed that it was not worth addressing? I think that we're entitled to an explanation, and I think the Court is as well so that it can understand what the Board's reasoning. I wanted to make one point about purpose that we've talked about a lot. This apparatus that's being claimed, it's not actually functioning the way when it's claimed. It's an apparatus with software that has this idle time period. And so these packets, when you talk about this time period, what it's saying is these packets are being sent to do something, but it's more the technological kind of environment that this claim is in. And another point about that, this disconnect hypothetical, the claim, the way it's worded and set up, the ITP, it doesn't matter if there's a disconnect or not. A disconnect is not required by the claim. So it has to function the same way when there's actually connectivity. And so in that case, if retransmission packets are considered to qualify as packets to keep the connection active, then the disconnect hypo is irrelevant because the claim, it doesn't cover the situation where there is connectivity, which is required as the way it's claimed, and it's a negative limitation. So with that, unless you all have any other questions. Thank you. Thank you. Thanks, both sides. Thank you.